UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUSTINA SHAW,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　) Case No: 15-cv-927-RCL
　　　　　　　　　　　　　　　　　　)
DISTRICT OF COLUMBIA,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)

FILED
SEP 28 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

### I. INTRODUCTION

This case is before the Court on plaintiff's motion for attorney fees, ECF No. 8, and defendant's cross motion for summary judgment, ECF No. 10. The case was referred to a magistrate judge and on March 15, 2016, Magistrate Judge Deborah A. Robinson issued a Report and Recommendation, ECF No. 15. This Court accepts and adopts in part, and modifies in part Magistrate Judge Robinson's Report and Recommendation. For the reasons stated below, plaintiff's motion for attorney's fees is granted in part and denied in part, and defendant's cross-motion for summary judgment is denied as moot.[1]

### II. BACKGROUND

The factual background of this case and the contentions of the parties are set out in Magistrate Judge Robinson's Report and Recommendation. *See* R. & R. 1–5. In sum, the Hearing Officer found that plaintiff's child, J.S. was denied a free appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA") on two occasions. *Id.* at

---

[1] As noted by Magistrate Judge Robinson, "The traditional summary judgment standard is not applicable to the plaintiff's motion, although it is styled as a motion for summary judgment." R. & R. 5 n.4.

1

2. Plaintiff then commenced an action for attorneys' fees, asking for $52,556 in accordance with the *Laffey* Matrix. *Id.* at 3. Defendant contends that plaintiff is only entitled to fees at rates equal to 75% of the *Laffey* Matrix, and thus that plaintiff is only entitled to $38,389.40.

Magistrate Judge Robinson found that plaintiff was the prevailing party and that plaintiff met her burden of demonstrating that the claimed rates were appropriate based on the complexity of the underlying action. *Id.* at 9–10. Magistrate Judge Robinson then found that defendant failed to show that the market rate for IDEA proceedings was equal to 75% of the *Laffey* Matrix rates. *Id.* at 10–11. Magistrate Judge Robinson found, however, that counsel failed to consistently exercise the requisite billing judgment and therefore recommended a reduction of the number of hours claimed by 20%. *Id.* at 11–12. Finally, Magistrate Judge Robinson recommended reducing the rate for travel time by one half. *Id.* at 12. Plaintiff objected to the reduction in hours recommendation, arguing that it lacked specificity and that it included items compensable under the IDEA, and defendant objected to use of the full *Laffey* Matrix rates.

### III. ANALYSIS

The IDEA provides that courts may award reasonable attorney's fees to prevailing parties. 20 U.S.C. § 1415(i)(3)(B)(i). The fees must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). A three part analysis guides the assessment of whether a requested fee award is reasonable: "First, the court must determine the 'number of hours reasonably expended in litigation.' Second, it must set the 'reasonable hourly rate.' Finally, it must determine whether use of a multiplier is warranted." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (internal citations omitted). To determine a reasonable hourly rate, the court considers "(1) the attorney['s] billing practices, (2) the attorney['s] skill, experience, and reputation and (3) the

prevailing market rates in the relevant community." *Id.* (internal quotation marks omitted). Attorney's fee litigation employs a burden-shifting scheme:

> The fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates. Once an applicant meets this initial burden, a presumption applies that the number of hours billed and the hourly rates are reasonable. At that point, the burden shifts to the opposing party to provide specific contrary evidence tending to show that a lower rate would be appropriate.

*Flood v. District of Columbia*, No. CV 15-497 (BAH), 2016 WL 1180159, at *3 (D.D.C. Mar. 25, 2016) (internal citations and quotation marks omitted).

### A. Reasonableness of Rates Requested

The Court refers to its Memorandum Opinion in *Joaquin v. District of Columbia*, 14-cv-1160, also issued today, for a summary of the relevant legal framework. Most importantly, as fully discussed in *Joaquin*, the D.C. Circuit in *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) "suggest[ed] a categorical approach to identifying reasonable reimbursement rates for prevailing IDEA plaintiffs," and therefore reasonable rates are to be determined without regard to the complexity of the particular IDEA litigation at hand. *See Flood v. District of Columbia*, No. CV 15-497 (BAH), 2016 WL 1180159, at *6–8 (D.D.C. Mar. 25, 2016). Therefore, the Court declines to accept Magistrate Judge Robinson's analysis that *Laffey* rates were warranted due to the complexity of the underlying action here. Instead, the Court finds that *Laffey* rates are warranted because plaintiff has submitted sufficient evidence showing that IDEA litigation as a category is sufficiently complex to warrant *Laffey* rates.

Plaintiff submitted evidence in the form of declarations by IDEA attorneys. Four of those declarations address the complexity of IDEA cases. *See* Hill Decl. ¶¶ 5–7, ECF No. 27-6; Savit Decl. ¶¶ 6–11, ECF No. 27-4; Hecht. Decl. ¶¶ 7–11, ECF No. 27-2; Mendoza Decl. ¶¶ 4–6, ECF No. 27-7. They state generally that IDEA cases "require[] specialized non-legal knowledge

regarding special education." Hill Decl. ¶ 5. This includes "knowledge of education policies, procedures, techniques, best practices, records, and administration" and "knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine, and others." *Id.* In addition, the limited discovery and pretrial proceedings in IDEA cases "makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses." *Id.* ¶ 6. This necessitates the preparation of "very many potential defense cases presented by the respondent." *Id.* Finally, the attorneys declared that "the administrative work is generally at least as complex as the federal work" in IDEA cases. *Id.* ¶ 7. They explain that "because at the administrative level the legal issues are rarely well defined until closing argument, at the administrative level one usually needs much more legal preparation and a much better general IDEA familiarity than is required at the federal level," and "one must be very familiar with every existing document and must prepare for a broad range of 'surprise' testimony, including possible testimony from a diverse range of experts." *Id.*

Other courts in this District have acknowledged the complexity of IDEA litigation. *See Merrick*, 134 F. Supp. at 339 (collecting cases and finding that "IDEA litigation is sufficiently complex to warrant full *Laffey* rates"); *see also Sweatt v. District of Columbia*, 82 F. Supp. 3d 454, 459 (D.D.C. 2015); *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 243 (D.D.C. 2012) (finding that *Laffey* rates should serve as a starting point in IDEA cases because they often involve appeals to federal court and the administrative component typically requires expert testimony); *Irving v. D.C. Pub. Sch.*, 815 F. Supp. 2d 119, 129 (D.D.C. 2011) (reaffirming "that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix"); *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 102 (D.D.C. 2010); *Cox v. District of Columbia*, 754 F. Supp. 2d

66, 76 (D.D.C. 2010) ("Defendant's claim that B.S. and E.J.'s hearings were 'uncomplicated' is absurd, as any reading of the comprehensive decisions by the two Hearings Officers in these cases demonstrates."). The court in *Merrick* summarized: "IDEA cases require testimony from education experts regarding whether a student has been denied a free and public education, . . . and plaintiffs' counsel must understand the bureaucratic workings of [DCPS], . . . and become conversant with a wide range of disabling cognitive, emotional, and language-based disorders and the corresponding therapeutic and educational approaches." *Merrick*, 134 F. Supp. at 339. The court in *Merrick*, in coming to this conclusion, relied on declarations that "describe[ed] the particular challenges that arise in special education cases," and "desrcib[ed] the frequent delays, unrealistic settlement offers, and time-consuming fee litigation that increase the complexity of IDEA cases." *Id.* The declarations submitted here make similar assertions. Finally, although the D.C. Circuit has declined to decide this issue, Judge Kavanaugh stated in his *Eley* concurrence that in his view, "the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases." *Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring). The Court finds that plaintiff has therefore satisfied her burden of showing that IDEA proceedings are sufficiently complex to warrant *Laffey* rates.

The Court also finds that defendant failed to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington v. District of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995). As noted by Magistrate Judge Robinson, "[d]efendant neither cites any authority for the proposition that there is a 'market rate' for IDEA administrative proceedings, nor offers evidence of any such 'market rate,'" beyond citations to other cases where the plaintiff was awarded fees at a rate of 75% of the *Laffey* matrix. *See* R. & R. 10. This Court is not persuaded by defendant's reliance on those cases. This Court sees no reason to arbitrarily reduce the

applicable *Laffey* rates to 75%. "[A]n automatic reduction in the plaintiff's requested reimbursement rate based only on the simplicity of an administrative proceeding runs counter to the Supreme Court's view that the relative complexity of a matter is generally presumed to be reflected fully in the number of hours billed." *Flood*, 2016 WL 1180159, at *7 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)). Automatically reducing rates risks "double-counting" the simplicity of the litigation. *Id.* Because a fee is determined by the number of hours works multiplied by the hourly rate, "reducing the *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice." *Merrick*, 134 F. Supp. 3d at 339.

If IDEA litigation is truly "simpler" than other federal litigation, attorneys can be expected to bill less hours, thereby resulting in an overall lower fee. If a court believes that an attorney has overbilled or improperly billed hours for the purpose of raising his or her fee, or has simply billed an unreasonable number of hours, the court may then "make an independent determination whether or not the hours claimed are justified." *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The court may, for example, reduce the fee award for inadequate billing judgment, *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), for hours billed unrelated or unnecessary to the litigation, *see Czarniewy v. District of Columbia*, No. CIV.A. 02-1496(HHK), 2005 WL 692081, at *4 (D.D.C. Mar. 25, 2005), for statutorily non-reimbursable time, *see A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 47 (D.D.C. 2012), or for double-billing, *see Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004). Therefore, the Court finds that plaintiff has provided sufficient evidence, in the form of declarations from attorneys practicing in this area of law, showing that IDEA proceedings are sufficiently complex and therefore that *Laffey* rates apply. Defendant has failed to provide sufficient evidence justify a 25% reduction in rates.

6

### B. Adjustment for Inadequate Billing Judgment

This Court accepts and adopts Magistrate Judge Robinson's conclusion that plaintiff's counsel failed to consistently exercise the requisite billing judgment, but modifies the recommendation that plaintiff's hours be reduced by 20%. This Court concludes that plaintiff's hours should be reduced by 10%. Courts must "make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Courts may also take a "holistic approach" to reducing hours. *See McAllister v. District of Columbia*, 160 F. Supp. 3d 273, 279–80 (D.D.C. 2016) ("Where a prevailing party has achieved only partial success, this Court has discretion to exercise its equitable judgment to 'identify specific hours that should be eliminated, or . . . simply reduce the award to account for the limited success.'"). The discretion to reduce hours is not, however, unlimited. The Supreme Court has stated, in the context of fees under 42 U.S.C. § 1988, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination . . . . Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).

First, the Court agrees with plaintiff that Magistrate Judge Robinson's proposed reduction includes compensable items. Magistrate Judge Robinson listed, as an example of inadequate billing judgment, an entry stating "[E]mail []asking Jay to see what he can do of the work authorized." R. & R. 11–12. However, plaintiff claims that this entry was "related to identifying a tutor . . . who could implement the hearing officer's award of compensatory education." Pl.'s Reply to Def.'s Resp. to Pl.'s Objs. 4, ECF No. 19. Courts may award fees related to implementing

7

or enforcing a decision or order. *See Douglas v. District of Columbia*, 67 F. Supp. 3d 36, 44 (D.D.C. 2014) (concluding that entries related to implementing the court's stay-put order were reasonable and recoverable); *Blackman v. District of Columbia*, 390 F. Supp. 2d 16, 20 (D.D.C. 2005) ("A district court may award fees to a prevailing party for reasonable postjudgment monitoring" of the losing party's compliance with the terms of the judgment."); *Watkins v. Vance*, 328 F. Supp. 2d 27, 33 (D.D.C. 2004) ("The Court concludes that plaintiffs' counsel's efforts in scheduling a timely IEP meeting, especially in light of defendants' failures to provide Kenneth an adequate IEP in the first place, are recoverable because the effort was the direct result of a court order."). Plaintiff has shown that entries related to implementing/enforcing the Hearing Officer's determination that J.S. was denied a FAPE are compensable and were properly billed.

Defendant's response to plaintiff's objection does not persuade this Court that these items should not have been included in the total fee calculation. Defendant merely argues that Magistrate Judge Robinson correctly noted that courts may take a holistic approach to reducing the number of hours claimed, that she listed certain entries only as examples of inadequate billing judgment, and that she was deliberate and thoughtful in her analysis. *See* Def.'s Resp. to Pl.'s Obj. to R. & R. 2–3, ECF No. 17. It makes no argument with respect to whether these hours are compensable. Therefore, the Court concludes that plaintiff has shown that the claimed hours expended on implementing the hearing officer's determination are reasonable, and defendant has not rebutted this showing. *See Covington v. District of Columbia*, 57 F.3d 1101, 1109–10 (D.C. Cir. 1995) (explaining that when a fee applicant has shown that the claimed number of hours are reasonable, the defendant may challenge plaintiff's evidence, but bears a burden of "either acced[ing] to the applicant's requested rate or provid[ing] specific contrary evidence tending to show that a lower

rate would be appropriate"). Plaintiff did not fail to exercise the requisite billing judgment with respect to these hours.

Nonetheless, the Court agrees that, based on plaintiff's billing statement, plaintiff failed to consistently exercise the requisite billing judgment. In addition to the first four entries identified by Magistrate Judge Robinson, the Court, after a review of plaintiff's billing statement, finds that plaintiff has not exercised the requisite billing judgment in several other circumstances. "A fee applicant's 'supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" *Bennett v. Castro*, 74 F. Supp. 3d 382, 404–05 (D.D.C. 2014) (quoting *Role Models Am.*, 353 F.3d at 970). But, "a 'fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Id.* at 405 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C.Cir.1982) (per curiam)) (internal quotation marks omitted). Therefore, billing records that repeat the same entry, or that describe meetings and telephone conferences without reference to subject matter, or that are block billed, have been found insufficient. *Id.*

Judge Huvelle's opinion in *Bennett v. Castro* is instructive. There, the court found that the 280 time entries at issue were "a mixed bag," with some being "clearly sufficiently specific," some "closer to the line, yet nevertheless reasonable," and some that were "too vague." *Bennett*, 74 F. Supp. 3d at 405–06. Of the "too vague" category, the court noted billing entries describing conference calls without any subject-matter description. *Id.* at 406. Finding that "[p]erhaps several dozen [entries] lack adequate subject-matter descriptions, and a handful more are lumped together with activities that might not warrant reimbursement," the court reduced the fee award by 10%. *Id.*

9

Here too, plaintiff's billing statement presents a mixed bag. Some entries are clearly sufficiently specific. For example, plaintiff's counsel spent 1.7 hours on "research[ing] the due process decisions of HO Charles Carron on finding a child eligible for special education," and 0.5 hours on "discuss[ing] need for 'bare Bones' compensatory plan with Jay Minchie, Witness." Some others, such as those identified by Magistrate Judge Robinson, include time spent on activities that counsel is not entitled to be compensated for. *See* R. & R. 11–12 ("Waited for meeting @ Eastern to start – Mrs. Shaw was no show."; "A telephone call with 'client to set up time to talk[.]'"; "[E]mail to witnesses . . . thanking them for their testimony."). Many more are too vague—they include calls and email communications with no subject matter description. For example, plaintiff included the following entries: "tel. call with Dr. Donnley"; "read another email from gov. atty."; "t/c to Dr. Nelson"; "email from DCPS atty"; e mail to Dr. Barnes". The Court notes that these entries are on the shorter end of the spectrum time wise; they are generally only 0.1 or 0.2 hours.

Therefore, considering that although plaintiff's counsel did not fail to exercise the requisite billing judgment with respect to entries regarding counsel's efforts to implement or enforce the hearing officer's determination, but that plaintiff's counsel did fail to exercise the requisite billing judgment with respect to time spent on non-compensable activities and with respect to vague entries for telephone conferences or email communications, the Court will reduce plaintiff's award by 10%. This decision is in accord with similar findings in other cases. *See In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing the award by 10% because the time entries were "replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed"); *Michigan v. U.S. E.P.A.*, 254 F.3d 1087, 1095 (D.C. Cir. 2001) (reducing the award by 10% when there were "numerous entries concerning meetings

and conferences that, although they include information concerning the identities of the individuals involved, are nevertheless devoid of any descriptive rationale for their occurrence"); *Bennett*, 74 F. Supp. 3d at 406; *see also In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009) (reducing the award by 5% because "some of plaintiffs' counsel's time entries . . . are so lacking in detail as to preclude any analysis of how counsel's time was spent"); *Role Models Am.*, 353 F.3d at 973 (reducing the award by 50% in part where "attorneys billed simply for 'research' and 'writing,' or for time spent in teleconferences or meetings—over one hundred in total—the purposes of which are not provided").

### C.   Travel Time

The Court accepts and adopts Magistrate Judge Robinson's recommendation that fees for travel time be awarded at one-half of the applicable *Laffey* rates. Neither party objects to a rate reduction for travel time. Plaintiff's counsel billed 2.9 hours for travel time. Therefore, this time will be compensated at one half of the applicable rate of $510, *i.e.*, $255, for a total of $739.50.

### D.   Fee Award Calculation

Plaintiff's counsel's total time billed equals 105.1 hours.[2] Stevie Nabors billed 1.1 hours at a rate of $250 per hour, for a total of $275. A paralegal billed 2.2 hours at a rate of $145 per hour, for a total of $319.[3] Charles Moran billed a total of 101.8 hours. 2.9 of these hours were for travel time. This travel time will be compensated at one half of the applicable rate of $510, *i.e.*, $255, for a total of $739.50. The remaining 98.9 hours are to be compensated at a rate of $510 per

---

[2] The Court's calculations are based on the revised billing statement submitted by plaintiff in conjunction with her motion for attorney's fees, ECF No. 8-5. The Court took plaintiff's total of 107.7 hours and subtracted the hours that plaintiff recorded, but did not bill monetarily for (*e.g.*, all the hours billed by Tanjima Islam). This amounted to 105.1 hours. The Court then determined from this total the number of hours attributable to Charles Moran, Stevie Nabors, and the paralegal, respectively, and multiplied those hours by the appropriate hourly rates.

[3] Plaintiff's billing statement lists the rate billed for the paralegal as $165.00. The *Laffey* Matrix submitted by plaintiff (the USAO *Laffey* Matrix for 2013–2014), however, lists the applicable rate for paralegals as $145.

hour, totaling $50,439. Plaintiff's award, prior to the above-described reduction, therefore totals $51,772.50. In accordance with the decision above, plaintiff's award will be reduced by 10%, or $5,177.25. Plaintiff's award therefore totals $46,595.25.

## IV.   CONCLUSION

In sum, the Court will grant in part and deny in part plaintiff's motion for attorney's fees, and will deny as moot defendant's cross motion for summary judgment. Defendant will be ordered to reimburse plaintiff a total of $46,595.25.


Date: September 28, 2016

Royce C. Lamberth
United States District Judge